Filed 8/26/20  In re N. H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re N.H., a Person Coming Under the Juvenile Court Law. | C090975 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, Plaintiff and Respondent, v. K.H., Defendant and Appellant. | (Super. Ct. No. JD239586) |

Appellant K.H., mother of the minor N.H., appeals from the juvenile court's exit orders granting father sole legal and physical custody of the minor and terminating dependency jurisdiction.  (Welf. & Inst. Code, §§ 388, 390, 395.)[1]  She contends the juvenile court abused its discretion in granting father sole legal custody of the minor.  We disagree and affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

# I. BACKGROUND

On July 13, 2018, Contra Costa County Children and Family Services filed a section 300 petition on behalf of the minor, N.H. (then age 6), based on mother's failure to protect the minor, pursuant to subdivisions (g) and (j).  Petitions were also filed on behalf of the minor's 17-year-old sibling and two-month-old half sibling, who are not subjects of this appeal.  Mother had 17 prior child protective service referrals.

The minor and his infant half sibling were ordered detained.[2]  The minor's noncustodial father, R.O. (father), who had come forward and requested placement, was provided supervised visits.  Mother was permitted to call the minor before 5:00 p.m. three times per week, but this provision was revoked two weeks later because mother was repeatedly calling after 5:00 p.m.  The minor was released to father's care at the August 27, 2018 hearing.

The social worker and the visitation supervisor had, after some difficulty, managed to arrange for mother to visit N.H. on Sunday afternoons and to place her calls to the minor between 6:00 and 6:30 p.m.  Mother had not wanted to visit on Sundays, due to her church schedule, and said father ignored some of her telephone calls to the minor because the minor was either sick or it was past the minor's bedtime.  Mother's visits, however, went well.

The juvenile court sustained the section 300 petition on October 15, 2018.  The disposition report recommended the minor be adjudged a dependent and remain placed with father.  The minor had been diagnosed with autism spectrum disorder and had developmental delays as a result of the disorder.  Father was pursuing the services of the Alta California Regional Center (Alta Regional) to assist with the minor's needs.  Father was also actively involved in the minor's education.  The minor had an Individualized Educational Plan (IEP) and was doing well in school.  Due to father's previous lack of involvement in the minor's life, and the minor's special needs, it was recommended

---

[2] The minor's 17-year-old sibling was not detained.

family maintenance services be provided prior to termination of dependency to assure father could continually provide for the minor's needs. The juvenile court adjudged the minor a dependent child of the court and the case was transferred to Sacramento County, where the minor resided with father.

On May 24, 2019, mother filed a section 388 petition for modification requesting joint physical custody of the minor with family maintenance services or, in the alternative, that mother receive a specific visitation schedule to allow for frequent and unsupervised visits.

On May 28, 2019, the social worker reported on how N.H. was doing in the father's care. Father had completed a parent education course with Valley Hi Family Resource Center on March 27, 2019, and was engaged in N.H.'s IEP through his school. N.H. completed an intake with Alta Regional on April 30, 2019, and was approved for services. The social worker recommended dependency be terminated with sole legal and physical custody to father and supervised visitation for mother. A combined section 388/364 hearing was set for November 14, 2019.

At the hearing, mother presented evidence and argument regarding her participation in services and her visits in support of her request for placement or joint placement of the minor. Mother objected to termination of dependency and attempted to establish that father was using inappropriate corporal punishment and, therefore, the need for jurisdiction continued. She objected to the Sacramento County Department of Child, Family and Adult Services' (Department) recommendation that father be awarded sole physical and legal custody. Minor's counsel concurred with the Department's recommendation.

The juvenile court first denied mother's section 388 petition for modification seeking joint physical custody or, alternatively, increased visitation schedule. It found mother had not made adequate progress in her services to establish a change of circumstances and that the minor would remain at risk of harm in her care.

The juvenile court then found there was no evidence of recent use of inappropriate corporal punishment and the conditions giving rise to jurisdiction no longer existed.

With respect to legal custody upon termination of dependency, the juvenile court noted the tension in the relationship between the mother and father as co-parents to the minor. The juvenile court believed this tension would be compounded if there was joint legal custody of the minor and, therefore, awarded sole legal and sole physical custody of the minor to father.

## II. DISCUSSION

When the juvenile court terminates dependency jurisdiction, it has authority to make orders addressing custody and visitation. (§ 362.4; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) Those orders focus on the minor's best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) "If there is a pending marital or paternity proceeding relating to the child, the custody order will be transferred to the existing family court file. (See [§ 362.4,] subd. (b).) Otherwise, the order may be used to open a new file in the superior court of the county in which the parent who has been given custody resides. (See *id.*, subd. (c).) The order shall continue 'until modified or terminated by a subsequent order of the superior court.' (*Id.*, subd. (b).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 863.) "An order entered pursuant to section 362.4 is commonly referred to as an 'exit order.' " (*In re Nicholas H., supra,* at p. 269.)

We review custody and visitation exit orders for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Such determinations are not disturbed in a dependency proceeding in the absence of an arbitrary, capricious, or patently absurd exercise of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) A court can also abuse its discretion by committing legal error. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 161.)

Mother contends the juvenile court abused its discretion in awarding father sole legal custody when it terminated the dependency. We find no abuse of discretion.

Legal custody, as distinguished from physical custody, is "the right and the responsibility to make the decisions relating to the health, education, and welfare of a

4

child." (Cf. Fam. Code, §§ 3003, 3006 with §§ 3004, 3007.) When parents have joint legal custody, they both share in the right and responsibility to make those decisions. (Fam. Code, § 3003.)

It is well-established that the family law presumption favoring joint custody does not apply to juvenile court custody orders entered upon termination of jurisdiction. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711-713.) While family law has a presumption favoring joint custody, "application of a family-law-based joint custody presumption would be inconsistent with the purpose of juvenile court law." (*In re Chantal S.*, *supra*, 13 Cal.4th at p. 206.) Instead, the dependency court, " 'which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' " (*Ibid.*)

Here, the juvenile court found there was tension in the parents' relationship as co-parents and that this tension would be compounded if there was joint legal custody. The evidence supports the juvenile court's conclusion and that forcing father to co-parent with mother would likely compound the tension to the minor's detriment.

The discord between parents was apparent at the outset of these proceedings. Father told the social worker that the reason he had not been involved in the minor's life earlier, despite having shared custody, was that mother was "delaying that relationship by constantly moving and changing her phone number." He stated he had paid regular child support and mother had always had his contact information, but she kept his children away. Mother claimed father chose not to see his children.

Parents could not even arrange a simple visitation or telephone schedule without intervention from a third party. When the minor was placed with father, visitation stopped for a time because parents could not reach a visitation agreement. Father had agreed to visits every Sunday between 3:30 and 4:30 p.m. and mother said she could not attend at that time because she had church. There was also gap in telephone visits. According to father, he had not answered mother's calls because the minor was sick, or it was the minor's bedtime.

Parents did not work these difficulties out on their own. The county worker created a phone schedule with father in which he agreed mother could call between 6:00 and 6:30 p.m. to speak with the minor. However, when the county worker attempted to gather information about when mother goes to church to see if visits could be on the same day, mother refused to provide details of her church hours and refused to accept the available slot for visits. Mother later apologized for her outburst and agreed to the visitation schedule, but the difficulties encountered by the county worker exemplify the problems the parents have working with each other.

In February 2019, father requested mother's visits be changed to take place in Sacramento, where the minor lives. Father preferred weekday visits so visits would not interfere with family activities and trips. Mother reported that she preferred Saturday visits and was unable to visit on any other day of the week. The family service worker who supervised mother's visits testified that while trying to orchestrate a mutually acceptable visitation structure, it was father who was expressing his frustration with the process, was acting angry, and using a loud tone of voice when talking to the worker about visitation. Ultimately, the visits were changed to every other Saturday for two and a half hours. Thus, both parents demonstrated that, not only were they unable to work things out between them, they became difficult to deal with when arranging matters for the benefit of the minor.

The Department's frustrations when trying to garner mother's cooperation did not end with arranging visitation schedules. Prior to disposition, several county workers referred mother to multiple services. Mother, however, refused to participate because she was not being ordered by the court to do so and, instead, contacted the Department's deputy director to complain about the way her case was being managed.

Parents' conflict, inflexibility, and lack of cooperation demonstrates their inability to compromise and work together for the benefit of the minor. They have demonstrated, through their behavior in the underlying matter, that given joint legal custody, they would likely argue over medical appointments, dental appointments, schooling, and special programs, all to the detriment of the minor. The minor in this case has special

6

educational and developmental needs that require active parental involvement. For example, father regularly communicates with the minor's teacher to discuss the minor's behavior, progress in academics, and special needs. The resulting conflict of forcing father to consult with, and attempt to obtain approvals from, mother in order to facilitate the minor's participation and progress in these programs, as well as to schedule medical and dental appointments or make medical decisions, would be to the detriment of the minor.

In sum, we conclude the juvenile court acted within its discretion in entering its custody order awarding sole legal custody to father. Should circumstances change, mother is free to seek modification of the custody order in the family law court. (§ 302, subd. (d); see also *In re Jennifer R.*, *supra*, 14 Cal.App.4th at p. 714.)

### III. DISPOSITION

The orders of the juvenile court are affirmed.


/S/

_____

RENNER, J.



We concur:


/S/

_____

HULL, Acting P. J.


/S/

_____

DUARTE, J.